EMMONS COUNTY *vs.* C. C. BENNETT.

Opinion filed December 1, 1899.

**Tax Deed—Delinquent Taxes.**

In the absence of a statute to the contrary, a tax deed regularly issued cuts off delinquent taxes for years previous to that upon which the deed is based.

**Prior Delinquent Taxes Cut off by Tax Deed.**

A county is seeking to secure judgments against certain lands for delinquent taxes thereon under the provisions of chapter 67 of the

Laws of 1897. It appears that the land involved was sold to the county under article 19 of chapter 15 of the Compiled Laws, which authorized counties to become purchasers at tax sales. The sale to the county was in 1888 for the tax of 1887. In 1889 the same land was sold to an individual purchaser for the tax of 1888, who paid all subsequent taxes, and received a tax deed, which is conceded to have been regularly issued. *Held,* that the tax deed so issued cut off the rights of the county under the prior sale, and such county is not entitled to judgment for said taxes.

Appeals from District Court, Emmons County; *Winchester, J.*

Actions by Emmons County against C. C. Bennett (three cases) to recover land sold to defendant for taxes. From a judgment in favor of plaintiff, defendant appeals.

Reversed.

*Horner & Stewart,* for appellant.

*George M. Register,* State's Attorney, for respondent.

YOUNG, J. The question presented in the above appeals is the same. This opinion will therefore govern the disposition of all three cases. The appeals are from tax judgments rendered by the District Court of Emmons county against certain lands situated in that county, under chapter 67 of the Laws of 1897, and are certified to this court under section 10 of said chapter, which authorizes such certification when the trial court shall deem the questions involved of great public importance, or likely to arise frequently, and application is made therefor. We will state only the facts relative to the N. E. ¼ of the N. W. ¼, and the N. W. ¼ of the N. E. ¼, of section 4, township 129 N., of range 79. It is stipulated that Cassius C. Bennett, who resists the entry of judgment against the land just described, received a treasurer's deed of said land on February 28, 1893, based upon a sale of the same in 1889 for the taxes of 1888, and that he has paid all taxes thereon since 1888. The stipulation also concedes the regularity of all the proceedings which culminated in the tax deed, and the validity of the deed itself. The claim of the county is for a tax prior to that under which Bennett acquired his deed, namely, for the tax of 1887. On this point it is agreed that in 1888 the County of Emmons became the purchaser of said lands for the tax of 1887, and that a certificate of sale was duly issued to it by the county treasurer, and that no deed was ever issued thereon to it, and no steps were taken by said county to protect the interests acquired by such purchase; neither has redemption been made from said sale. The judgment authorized to be rendered by the statute under which these proceedings are had is against the land, and constitutes a lien thereon as against the estate or interest of every person whatsoever, so that the effect of a judgment for the county upon the facts in the cases before us would be to declare the rights of Bennett acquired by his purchase for the 1888 tax altogether subordinate to the prior sale to the county for the 1887 tax. It may be stated as an established principle that the interest which a purchaser of lands at a tax

sale acquires is, in the absence of a statute to the contrary, freed from liability for delinquent taxes of previous years, and that a tax deed regularly issued cuts off all interests acquired by purchasers at tax sales for taxes prior to that upon which the tax deed is based. *Preston* v. *Van Gorder,* 31 Iowa, 250; *Bowman* v. *Thompson,* 36 Iowa, 505; *Kessey* v. *Connell* (Iowa) 27 N. W. Rep. 365; *Meldahl* v. *Dobbin,* 8 N. D. 115, 77 N. W. Rep. 280; *Jarvis* v. *Peck,* 19 Wis. 74; *Sayles* v. *Davis,* 22 Wis. 225; *Irwin* v. *Trego,* 22 Pa. St. 368; *Huzzard* v. *Trego,* 35 Pa. St. 9; *Anderson* v. *Rider,* 46 Cal. 135; *Law* v. *People,* 116 Ill. 244, 4 N. E. Rep. 845. There could be no question that the 1887 tax, which the county now seeks to enforce, would have been cut off by the sale to Bennett for the tax of 1888, if the purchaser had been an individual instead of the county. That is conceded. But counsel for the county contends that the interests which the county acquired by its purchase were not subject to be lost by a subsequent sale for a subsequent tax like individual purchasers. We think otherwise. All of the proceedings relative to the taxes in question were governed by the Compiled Laws of the then territory. By section 1630 the county treasurer was authorized to bid off lands at tax sales in the name of the county, in the absence of other bidders. Said section declares that the county acquires "all the rights, both legal and equitable, that any other purchaser could acquire, by reason of said purchase." Section 1632 authorized an assignment of the county's certificate to any person who would pay the taxes, penalty, interest, and costs of sale and transfer, and declares that such "assignment and transfer shall convey unto said purchaser all rights of said county, both legal and equitable, in and to said real estate, as much so as if he had been the original purchaser at said tax sale." These provisions do not seem to leave room for doubt that it was the legislative purpose to create an authority in the county to become a purchaser on the same basis as an individual, in the contingency of there being no private bids. This being true, it does not alter the rights of the purchaser at a subsequent sale to show that there may have been a legislative omission in not guarding the right of the county in its purchase against loss by a sale upon a subsequent tax. It is contended, too, that Bennett's rights were expressly subject to those of the county, under the statute. Section 1638, after providing for the issuance of tax deeds, declares that a deed so issued "shall vest in the grantee an absolute estate in *fee simple* in such land, subject, however, to all the claims which the territory may have thereon for taxes or other liens or incumbrances. We are of the opinion that the claim for taxes or liens in this section relates entirely to those coming into existence subsequent to the tax upon which the deed is issued. This was the interpretation given to a similar statute by the Supreme Court of Wisconsin. In *Sayles* v. *Davis,* 22 Wis. 225, the court said: "The words, 'subject, however, to all unpaid taxes and charges,' in section 25, chapter 22, Laws 1859, have reference only to such unpaid

taxes and charges as may have accrued subsequently to the sale on which the deed.is issued." We accordingly have reached the conclusion that the interest acquired by the county by its purchase at the tax sale was effectually cut off by the sale and delivery of a tax deed to Bennett upon a subsequent tax, and therefore the county is not entitled to judgment. The facts being similar, the judgment of the District Court in each of the cases above entitled is reversed. All concur.

(81 N. W. Rep. 22.)